UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL MILCHIN, <br>     *Petitioner*, <br><br> v. <br><br> WARDEN, <br>     *Respondent*. | ) Case No. 3:22-cv-195 (KAD) <br> ) <br> ) <br> ) <br> ) <br> ) MAY 25, 2022 <br> ) |

**MEMORANDUM OF DECISION**
**RE: RESPONDENT'S MOTION TO DISMISS (ECF NO. 7)**

Kari A. Dooley, United States District Judge:

The petitioner, Michael Milchin ("Milchin"), filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking transfer to home confinement and time credits of fifteen days per month during the lockdown in 2020 and 2021 when programming was limited. As support for his request for transfer to home confinement, Milchin asserts claims relating to the conditions of his confinement and his medical care. The respondent has filed a motion to dismiss the petition. For the following reasons, the motion to dismiss is GRANTED.

**Background**

Milchin currently is confined at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). In early 2021, a dermatologist biopsied Milchin's nose. Resp. Mem. Ex. B, Doc No. 9, at 51. The biopsy showed a basal cell carcinoma. *Id.* at 47, 49. In April 2021, a dermatologist recommended surgical excision. *Id.* at 43. At the surgical consultation, however, Milchin declined surgery and stated that he would pursue surgery after he is released from custody. *Id.* at 100. Milchin underwent an alternate treatment with Imiquimod cream, after which he was scheduled for a follow-up consultation with a general surgeon on or about May 23, 2022. *Id.* at 20. Milchin also refused the COVID-19 vaccine. *Id.* at 117.

In less than two years, Milchin filed four motions seeking compassionate release with the sentencing judge in the Eastern District of Pennsylvania. In denying the fourth such motion, the court considered and rejected many of the arguments Milchin asserts in this case. The court found that Milchin's claim that the Bureau of Prisons ("BOP") was refusing to treat his basal cell carcinoma was meritless as the medical records show that Milchin refused recommended treatment. The court also noted that Milchin had not identified conditions serious enough to justify release and found that Milchin's unexplained refusal to be vaccinated also defeated his request for compassionate release. *See United States v. Milchin,* Criminal Action No. 17-00284-1, 2022 WL 196279, at *2 (E.D. Pa. Jan. 21, 2022). The court reiterated that early release would be inconsistent with the factors listed in 18 U.S.C. § 3553(a), *id.,* and stated that the court cannot order BOP to transfer him to home confinement, as that decision rests solely with BOP. *Id.* at *1 n.1.

Milchin also has previously filed a case in this district seeking release. *See Milchin v. Easter*, No. 20-cv-1412(VAB). The court in that case granted the respondent's motion to dismiss, noting that even if the court were to construe the petition as a motion for a sentence reduction or compassionate release under 18 U.S.C. § 3582, the request must be denied because Milchin was not sentenced in the district. And, even if the court did have jurisdiction, the Eastern District of Pennsylvania had denied the same request on the same facts Milchin alleged in his petition in Connecticut. See Doc. No. 11.

**Standard of Review**

Section 2241 affords relief only if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petition filed pursuant to Section 2241 may be used to challenge the execution of a prison sentence. Thus,

2

Section 2241 petitions are appropriately used to challenge conditions of confinement or sentence calculations. *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006). Before filing a habeas petition pursuant to Section 2241, prisoners are required to exhaust internal grievance procedures. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).

**Discussion**

Milchin has filed two documents docketed as motions for compassionate release. *See* Doc. Nos. 1, 5. The second document includes a Section 2241 petition form listing four grounds for relief: (1) Milchin was denied review for Coronavirus Aid, Relief, and Economic Security ("CARES") Act relief in violation of his rights under the Fifth and Eighth Amendments; (2) denial of his rights under the Fifth and Eighth Amendments for failure to follow COVID protocols, medical staff shortages, and lack of access to the law library, scanner, printer, and copier; (3) violation of his Fifth and Eighth Amendment rights through deliberate indifference to his serious medical needs; and (4) BOP refused to properly enact the First Step Act ("FSA"), as credits under the Act were supposed to be applied on January 19, 2022 but none have been applied to date. For relief, Milchin seeks transfer to home confinement and an award of time credits that, once applied, would bring him to 50% completion of his sentence.

*Exhaustion of Administrative Remedies*

Respondent first argues that Milchin has not exhausted his administrative remedies on any of his claims. "Before seeking habeas relief under § 2241, ... prisoners must exhaust any available administrative remedies, or else justify their failure to exhaust these remedies." *Razzoli v. Strada*, No. 10-cv-4802 (CBA), 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013). The BOP has a four-step process for inmates to exhaust administrative remedies: informal resolution, initial filing with

3

the Warden, and two levels of appeals, first to the Regional Director and then to the Central Office. *See* 28 C.F.R. §§ 542.13-15.

"Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009). Courts may excuse a habeas petitioner's failure to exhaust administrative remedies if doing so "would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 437 (D. Conn. 2020). The Second Circuit has identified four bases to excuse administrative exhaustion in the habeas context: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

In his motions, Milchin states that prison officials told him that no responses to BP-8 or BP-9 requests, the informal resolution and appeal to warden steps, would be forthcoming and that inmates could not get BP-10 forms to appeal to the regional director. *See* Doc. No. 1 at 2; Doc. No. 5 at 11. Respondent does not address the availability issue in her motion. Thus, the Court cannot determine whether administrative remedies were available to Milchin. Nonetheless, Milchin's claims fail on the merits.

*Release to Home Confinement*

Milchin seeks an order that he be released to home confinement. BOP has the exclusive authority to determine the facility where an inmate will serve his sentence and to transfer the

inmate from one facility to another. Any decision of BOP relating to the place of confinement "is not reviewable by any court." 18 U.S.C. § 3621(b); *see U.S. v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (noting that "district court does not control how the Executive Branch carries out a defendant's sentence."). Accordingly, courts considering requests to be transferred to home confinement have consistently denied such requests, as they lack authority to order such transfers. *See, e.g., U.S. v. Woody*, 463 F. Supp. 3d 406, 408–09 (S.D.N.Y. 2020) (denying COVID-19 related request to be transferred to home confinement).

Under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), Congress expanded the authority of BOP to transfer inmates to home confinement if certain criteria are met. Like a transfer to home release under section 3621(b), however, the decision to grant a transfer to home confinement under the CARES Act is reserved to the discretion of BOP. *See U.S. v. Nnawuba*, No. 18 Cr. 117-6 (KPF), 2022 WL 1322207, at *6 n.2 (S.D.N.Y. May 3, 2022); *see also U.S. v. Ogarro*, No. 18-cr-373-9 (RJS), 2020 WL 1876300, at *6 (S.D.N.Y. Apr. 14, 2020) (explaining that inmates can seek medical furlough or transfer to home confinement under the CARES Act but "the Court lacks authority to order either one"). So too does this Court lack authority to order Milchin released to home confinement.

*Time Credits*

Milchin contends that BOP has been slow to calculate FSA good time credits and asks the Court to order that he receive fifteen days of credits for each month in 2020 and 2021. He appears to believe that if such credits were applied, he would have served 50% of his sentence and would meet the criteria for release to home confinement under the CARES Act home confinement policy. Milchin's arguments fail for several reasons.

5

On December 21, 2018, Congress enacted the FSA, which encouraged federal inmates to participate in evidence-based recidivism reduction programs and other productive activities. Inmates earn time credits upon successful participation in these activities, which in turn qualify the inmates for early release from custody. *See* 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A). Congress directed the Attorney General to implement the program in phases. The first phase, to be completed within 210 days of the enactment of the FSA, required the Attorney General to develop a risk and needs assessment system to determine and address each inmate's recidivism risk. *See* 18 U.S.C. § 3632(a). The next phase was to implement the system and complete the initial intake risk and needs assessment for each inmate within 180 days. *See* 18 U.S.C. § 3621(h)(1)(A). In the final phase, lasting from January 15, 2020 to January 15, 2022, BOP was required to "begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination." 18 U.S.C. § 3621(h)(1)–(2). During the final phase, the FSA directed that "priority for such programs and activities shall be accorded based on a prisoner's proximity to release date." 18 U.S.C. § 3621(h)(3).

Thus, a prisoner may earn time credits only for completing programs to which he has been specifically assigned based on his particular recidivism risk. Milchin has not yet been assigned to any programs and is not yet eligible to earn time credits under the FSA. Milchin asks the Court to order that he be awarded time credits for programs he completed that may not be related to his recidivism risk and that he be awarded the maximum available time credits for 2020 and 2021, even if he did not complete sufficient programs due to limited program availability during the pandemic. Milchin provides no authority warranting such an award or even suggesting that the Court has the authority to order BOP to make such an award. Milchin has not identified any credits

6

for which he is eligible under the FSA that have not been awarded.

In addition, Milchin appears to have misconstrued the application of the time credits. Milchin contends that all time credits can be applied to his sentence and will move up his release date.[1] He argues that, under this construction, he will have served 50% of his sentence and, therefore, be eligible for consideration for transfer to home confinement. Time credits, however, may be lost. *See* 28 C.F.R. § 523.43; *see also* 28 C.F.R. § 541.3. For this reason, the statute provides that a prisoner is eligible to have earned time credits applied for earlier release to prerelease custody only when he has earned time credits that equal the remainder of his sentence. 18 U.S.C. § 3624(g)(1)(A). At that time, the credit can immediately be applied and would no longer be subject to loss for future prohibited acts. Until Milchin accumulates sufficient time credits to equal the remainder of his sentence, he is not eligible to have those credits applied. Accordingly, this claim is without merit.

*Eighth Amendment*

Milchin argues that he must be released to home confinement because he is at a greater risk of contracting COVID-19. He also contends that prison officials have been deliberately indifferent to his basal cell carcinoma. As explained above, the Court cannot order Milchin released to home confinement. If he could prevail on his Eighth Amendment claim, he would be entitled only to an order that he be provided appropriate medical care or constitutional conditions of confinement. *See Reynolds v. Petrucci*, No. 20-CV-3523 (LLS), 2020 WL 4431997, at *2 (S.D.N.Y. July 29, 2020) (appropriate remedy for unconstitutional conditions of confinement challenged in 2241

---

[1] BOP records report Milchin's release date as June 27, 2029. *See* www.bop.gov/inmateloc/.

petition is relief from the unconstitutional conditions, not release from custody). However, Milchin does not seek this relief in his petition.

Prison conditions can constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To establish an Eighth Amendment violation, Milchin must allege facts establishing an objective element and a subjective element. *See Smith v. Fischer*, 500 F. App'x 59, 61 (2d Cir. 2012) (citations omitted). Objectively, Milchin must show that his conditions of confinement "pose a substantial risk of serious harm." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020) (citation omitted). Especially when considering claims relating to the facility response to COVID-19, the conditions are "evaluated in light of the steps that the facility has already taken to mitigate the danger." *Id.* (citations omitted). In addition, subjectively, prison officials must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw that inference." *Id.* at 202 (citing *Farmer*, 511 U.S. at 835).

Regarding the basal cell carcinoma on Milchin's nose, the medical records show that Milchin has refused treatment recommended by a dermatologist and a surgeon. Milchin's refusal of treatment negates any Eighth Amendment claim for failure to treat the carcinoma. *See Day v. Lantz*, 360 F. App'x 237, 239 (2d Cir. 2010) (prisoner failed to show that defendants were aware of but consciously disregarded a substantial risk to his health where hernia was timely diagnosed and treated but prisoner refused to undergo required surgery); *Williams v. Sykes*, No. 9:17-CV-990 (TJM/ATB), 2019 WL 2374116, at *8 (N.D.N.Y. May 10, 2019) (plaintiff cannot decline surgery and then assert claim for deliberate indifference to medical needs (citing cases)), *report and*

*recommendation adopted*, 2019 WL 2369882 (N.D.N.Y. June 5, 2019). In reply, Milchin argues that he has a right to refuse medical treatment. Although he is correct, his refusal does not give rise to a deliberate indifference claim. *See Mendoza v. Schult*, No. 9:09-CV-466 (LEK/RFT), 2011 WL 4592381, at *5 (N.D.N.Y. Sep. 14, 2011) (prisoner who declines medical treatment cannot establish deliberate indifference claim) (citing cases). Thus, Milchin fails to assert a cognizable Eighth Amendment claim for deliberate indifference to medical needs.

Milchin also fails to state a cognizable claim regarding the prison's response to COVID-19. As facts supporting his claim, Milchin generally lists "medical staff shortage, failure to follow COVID Protocol, understaffing, explosion of covid, full lockdown with no access to law library, scanner, printer, copier." Doc. No. 5 at 8. He appears to base his arguments on country-wide outdated reports, citing reports from Forbes from December 2021 and reports of a visit to the prison by state senators and a conversation they had with a union representative. *Id.* at 12.

Milchin does not describe any actual conditions at FCI Danbury and provides no information about the measures currently being taken to mitigate the spread of COVID-19. He contends that there are 9,000 cases of COVID-19 but BOP records for May 16, 2022 show only two cases at FCI Danbury and only 115 cases among inmates nationwide. *See* www.bop.gov/coronavirus/. Because Milchin fails to allege facts showing that he is subjected to a substantial risk of serious harm from COVID-19, his deliberate indifference claim is dismissed.[2]

*Fifth Amendment*

Milchin references the Fifth Amendment along with the Eighth Amendment in his first

---

[2] Further, Milchin does not explain his refusal to be vaccinated, a substantial measure to combat the spread of COVID-19. As discussed above, his refusal of treatment—here, the refusal to be vaccinated—undercuts any claim for deliberate indifference to medical needs.

three grounds for relief. He does not allege that he was denied due process at any prison proceeding. Milchin does, however, allege that he has been denied access to the law library, scanner, printer, and copier due to the pandemic. The only possible Fifth Amendment claim would be for denial of access to the courts. *See Stover v. Carlson*, 408 F. Supp. 696, 698 (D. Conn. 1976) (federal inmates' right of access to the courts is guaranteed by the Fifth Amendment).

A prisoner's right of access to the courts encompasses "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). To state a claim for denial of access to the courts, Milchin must have suffered an actual injury. To establish an actual injury, he must allege facts showing that the respondent took, or was responsible for, actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002). Milchin filed this action as well as at least two others and four motions for compassionate release in the Eastern District of Pennsylvania. He identifies no case that he was unable to file. Thus, Milchin has presented no facts suggesting that he has been denied access to the courts, and his claim fails.

**Conclusion**

Respondent's motion to dismiss the petition for writ of habeas corpus [**Doc. No. 7**] is **GRANTED**. Any appeal of this order would not be taken in good faith. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 25th day of May 2022 at Bridgeport, Connecticut.

*Kari A. Dooley*
Kari A. Dooley
United States District Judge